<u>NOT FOR PUBLICATION</u>                                   [Dkt. Ent. 32]

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  |  |
|---|---|
| OPERATIVE PLASTERERS & CEMENT MASONS INTERNATIONAL ASSOC. LOCAL 8, et al., | |
| Plaintiffs, | |
| v. | Civil No. 08-6163 (RMB-JS) |
| AGJ CONSTRUCTION, LLC., et al., | **MEMORANDUM & ORDER** |
| Defendants. | |

**BUMB**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon a motion for reconsideration, pursuant to Local Civil Rule 7.1(i), or alternatively for immediate interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), by the plaintiffs, Operative Plasterers & Cement Masons International Association Local No. 8, et al., (collectively, the "Plaintiffs"). Plaintiffs initiated this action to recover on a judgment they had obtained in the Eastern District of Pennsylvania from parties who, they contend, were liable for paying that judgment. Noting that federal subject-matter jurisdiction is strictly limited in enforcement proceedings, the Court, <u>sua</u> <u>sponte</u>, directed the parties to brief whether this case falls within the Court's jurisdiction. On October 30, 2009, the Court issued an Order retaining

1

jurisdiction over this action, but only to the extent that it sought recovery of moneys already subject to the prior judgment; the Order disclaimed the Court's jurisdiction to adjudicate Plaintiff's allegations that defendants not subject to the prior judgment are liable for the misconduct underlying that proceeding.

Plaintiffs seek reconsideration, or immediate appeal, of that determination.  The Court held oral argument on Plaintiffs' motion on December 7, 2009.  Plaintiffs, having discerned from oral argument a better understanding of the Court's ruling, sought leave to amend their complaint, pursuant to Federal Rule of Civil Procedure 15(a), or alternatively to stay this action and seek relief from the judgment in the Eastern District of Pennsylvania, pursuant to Federal Rule of Civil Procedure 60(b). The Court has allowed Plaintiffs two weeks to decide which course they intend to pursue.  In any event, Plaintiffs' request rendered moot its motion for reconsideration or immediate appeal. The Court nonetheless takes this opportunity to clarify its subject-matter jurisdiction ruling.[1]

## BACKGROUND

The Court need not recite the underlying facts here, as they are detailed in its July 24, 2009 and October 30, 2009 Opinions.

---

[1] Courts may, in their discretion, opine on matters even once they have become moot.  See Berg v. Obama, No. 08-4340, __ F.3d __, 2009 WL 3764028, *2 (3d Cir. Nov. 12, 2009).

[Dkt. Ents. 23 & 31.]  By way of summary, Plaintiffs obtained a judgment against AGJ Construction (the "Judgment Defendant") on April 17, 2008.  Plaintiffs aver that the Judgment Defendant has been "discontinued" without paying its obligation under the judgment, and that other persons or entities named in this action (the "Non-Judgment Defendants") bear liability for the judgment under theories of "piercing the corporate veil," "alter-ego," and "single employer".  Notably, the Non-Judgment Defendants include both individuals and LLCs, some of which existed at the time of judgment and some that were created subsequently.[2]

## DISCUSSION

The Supreme Court defined the limits of subject-matter jurisdiction over enforcement proceedings in Peacock v. Thomas, 516 U.S. 349, 357 (1996).  Since enforcement of a judgment is not itself a federal cause of action, Peacock held that a court's jurisdiction to enforce its judgments was a manifestation of supplemental (or "ancillary") jurisdiction.  However, such supplemental jurisdiction does not extend "beyond attempts to execute, or to guarantee eventual executability of, a federal

---

[2] The non-judgment individuals are Joseph LaMania, Eugene Taylor, and Alexander Cisco, who "wholly own" all LLCs named in this action.  (Compl. ¶¶ 10-12, 18, 25.)  The Non-Judgment LLCs consist of (1) LLCs created between 1999-2000, including CTL Associates, LLC, AGJ Leasing, LLC and Architectural Foam Fabricators, LLC; and (2) LLCs formed after the Plaintiffs brought the original suit against AGJ Construction, including Lifetime Stucco, LLC and JAG Restoration and Construction, LLC. (Id. at ¶¶ 18, 25.)

3

judgment." 516 U.S. 349, 357 (1996).  In other words, district courts do not maintain "ancillary jurisdiction over new actions in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment." Id. at 351.  In a recent unpublished[3] decision applying Peacock, the Third Circuit explained that supplemental jurisdiction in an enforcement action "does not extend to suits demanding that a third party use its legitimately held assets to satisfy a previously rendered judgment." Gambone v. Lite Rock Drywall, 288 F. App'x 9, 12 (3d Cir. 2008).  Rather, such jurisdiction extends only to "assets already subject to the judgment," as when a judgment defendant has shifted assets to third parties to avoid paying the judgment.

The Court, applying the Peacock rule, held that its jurisdiction in this enforcement action is limited to Plaintiffs' efforts to recover assets subject to the Eastern District of Pennsylvania judgment, and does not extend to Plaintiffs' efforts to impute the Judgment Defendant's liability to non-judgment persons or entities.

---

[3] Plaintiffs argued that the Court's citation to an unpublished opinion was improper.  Although the Third Circuit, by tradition, does not cite to its own unpublished opinions, see 3d Cir. I.O.P. § 5.7, nothing prevents this Court from citing to such opinions as persuasive authority.  See Fed. R. App. P. 32.1(a) ("A court may not prohibit or restrict the citation of federal judicial opinions . . . that have been designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent,' or the like.").

Plaintiffs have sought reconsideration primarily on the ground that the Court misconstrued this action as an enforcement proceeding, when the action should have been viewed, according to Plaintiffs, as stating an independent ERISA claim.  The problem with this position is that, notwithstanding Plaintiffs' ex post characterization of this action, the complaint itself seeks only enforcement of the existing judgment.  (See, e.g., Compl. ¶ 1 ("This suit seeks to establish that the [Non-Judgment Defendants] are . . . liable for the debts of [the Judgment Defendant] . . . .").)  The complaint's substantive allegations all aim to establish not that the Non-Judgment Defendants committed an ERISA violation, but that they bear liability for the judgment Plaintiffs already obtained.[4]  Indeed, the relief demanded in the complaint is that the Non-Judgment Defendants be held "personally liable for the debts" of the Judgment Defendant, and that they should be ordered to pay $515,275.56, the precise amount of the existing judgment.  (Compl. at 14.)[5]

To qualify as a new ERISA claim, the complaint would have had to allege that a third party was either responsible for

_____

[4] Plaintiffs' characterization of this action as raising an independent ERISA claim is further belied by the fact that they named the Judgment Defendant as a defendant in this action.

[5] It was evident to the Court at oral argument that Plaintiffs had not actually re-read their complaint in light of this subject-matter jurisdiction issue, as they all but conceded that the Court's reading of the complaint was correct.

commission of the original ERISA violation, or that the third party committed a new and distinct ERISA violation.  In the former instance, a third party is "responsible" if it directly committed the original violation or had "common control" over the judgment defendant when the ERISA violation occurred.  See Central States, SE & SW Areas Pension Fund v. Central Transport, Inc. 85 F.3d 1282, 1286-87 (7th Cir. 1996).  An assertion of "common control" must be based on a third party's direct involvement in the ERISA violation at the time of the violation and not based on the third party's vicarious liability derived solely from its relationship to the judgment defendant.  Ellis v. All Steel Coilst., Inc., 389 F.3d 1031, 1035 (10th Cir. 2004). Since the complaint here did not make these allegations, the Court correctly construed this action as an enforcement proceeding.

Plaintiffs have argued that an independent ERISA violation is sufficiently alleged whenever a complaint avers that the non-judgment defendants acted as a "single employer" with, or were an "alter-ego" of, the judgment defendant.  The weakness of this argument is illustrated by the two leading cases accepting that a newly filed post-judgment action can present an independent ERISA claim.  In Ellis, the Tenth Circuit held that a theory of "alter-ego" liability under ERISA could only provide an independent basis for subject-matter jurisdiction if the non-judgment

defendant had a direct role in the ERISA violation.  389 F.3d at 1035.  Ellis therefore rejected efforts to impose liability for a judgment on an alter-ego successor of the judgment defendant. Id. at 1032.  Ellis explains:

> To ignore the "significantly different" nature of a vicarious alter-ego claim vis-a-vis the direct cause of action giving rise to the underlying federal judgment -- indeed, going so far as to say that alter-ego status constitutes an element of the underlying cause of action -- would render . . . Peacock meaningless here.  There would be no such thing as a judgment-enforcement action based on alter-ego allegations, just many "direct" ERISA claims asserted against alter egos.

Ellis, 389 F.3d at 1037 (citations omitted).  The facts of Central States, a Seventh Circuit case, further illustrate this point.  There, a plaintiff-pension fund won two separate ERISA judgments against a group of employers and their individual proprietor for untimely withdrawals.  85 F.3d at 1284.  When the judgment defendants failed to pay, the plaintiff brought an action against two additional companies -- alter-egos of the judgment defendants -- on the theory that they were also liable for the original violation.  These non-judgment defendants were alleged to have "dominated and controlled" the judgment defendant.  Id. at 1285.  Such control included the "preparation and maintenance of payroll records," and "recruitment, hiring, supervising, disciplining, and firing of [judgment defendant] employees."  Id.  In other words, the Central States non-judgment defendants jointly committed the underlying ERISA violations. Here, by contrast, Plaintiffs have named certain non-judgment

7

defendants that did not even exist at the time the ERISA violation occurred, and the connection to the underlying ERISA violation of some non-judgment defendants that did exist may be attenuated.  Thus, to plead an independent ERISA claim, Plaintiffs must do much more than simply assert "alter-ego" and "single employer" theories of liability.[6]

Finally, the Court raised another concern with the parties at oral argument that bears mention here.  Federal Rule of Civil Procedure 60(b) defines the procedure to reopen a judgment when "newly discovered evidence" arises, or relief is otherwise justified.  See Fed. R. Civ. P. 60(b)(2), (6).  For good reason, the rule imposes a rigorous burden upon the party seeking to reopen the judgment.  See Coltec Industries, Inc. v. Hobgood, 280

---

[6] Plaintiffs repeatedly stated at oral argument that their "alter-ego" and "single employer" claims establish a federal cause of action because the theory arises under federal labor law.  See NLRB v. Omnitest Inspection Services, Inc., 937 F.2d 112, 118 (3d Cir. 1991) (articulating the federal labor-law doctrine that a newly created corporate entity may remain "subject to all the legal and contractual obligations of [its] predecessor." (citation omitted)).  Of course, the "alter-ego" and "single employer" doctrines allow imputation of liability to third parties; they are not themselves independent federal causes of action.  See Operative Plasterers & Cement Masons Int'l Ass'n Local 8 v. AGJ Const., No. 08-6163, 2009 WL 2243900, *4-6 (D.N.J. July 24, 2009) (setting out the controlling law).  As Ellis explains, if reliance upon a theory of vicarious liability were sufficient to avoid the jurisdictional limitations of Peacock, then Peacock would be rendered meaningless.  Ellis, 389 F.3d at 1037.  See also Gambone, 288 F. App'x at 12 ("[A]ncillary jurisdiction was not intended for use as a tool for establishing personal liability on the part of a new defendant, for instance by designating that third party as an alter ego of the indebted party . . . ." (emphasis added)).

F.3d 262, 271 (3d Cir. 2002) ("The general purpose of Rule 60(b) is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." (citation omitted)).  Plaintiffs have said that they filed this new action because they discovered, subsequent to entry of the judgment, that the Non-Judgment Defendants participated in the underlying ERISA violation.  In such a case, Rule 60(b) provides the optimal avenue for relief for a variety of reasons.  First, when possible, disputes should be settled by wholes, not in a fractured and piecemeal manner.  Develcom Funding, LLC v. American Atlantic Co., No. 09-1839, 2009 WL 2923064, *5 (D.N.J. Sept. 9, 2009) (citing Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 111 (1968)).  Second, failure to name in a single action parties who jointly committed misconduct raises serious questions about whether preclusion doctrines prevent the subsequent pursuit of previously unjoined parties.  See Itzkoff v. F & G Realty of New Jersey, Corp., 890 F. Supp. 351, 355-60 (D.N.J. 1995) (holding that a plaintiff could not sue a coconspirator when he had failed to join that defendant in a previous out-of-state action).  But see Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 139 n.4 (3d Cir. 1999) (casting doubt upon Itzkoff).  Third, successfully reopening the judgment in the first proceeding would avoid all of the difficult questions, discussed at length herein, about a court's limited subject-matter jurisdiction in enforcement

9

proceedings.  Finally, it seems inequitable that Plaintiff should be permitted to do an end-run around the strictures of Rule 60(b) by filing this later action.  Thus, the Court suggests that seeking relief from the judgment is the most prudent, and least perilous, course.

For these reasons, as well as those stated on the record, **IT IS** on this, the **9th** day of **December 2009**, hereby

**ORDERED** that the motion for reconsideration or immediate appeal shall be **DENIED AS MOOT**; and

IT IS FURTHER **ORDERED** that Plaintiffs shall, by December 21, 2009, **SEEK LEAVE** either (1) to file an amended complaint before this Court, or (2) to reopen the judgement before the United States District Court for the Eastern District of Pennsylvania and stay this action.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE